IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHEYENNE EXPLORATION, LLC, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-0809-D |
| VS. § | |
| § | |
| TED ALEXANDER, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Defendant's motion to dismiss presents the question whether the court can exercise *in personam* jurisdiction over a Kansas resident in a suit by a Texas resident seeking a declaratory judgment that a letter of intent executed by the parties was never intended to be a binding and enforceable agreement to enter into a lease involving mineral rights on the Kansas resident's ranch. Concluding that the Texas resident has not made a prima facie showing of *in personam* jurisdiction, the court grants the motion and dismisses this case without prejudice.

I

This is a removed action by plaintiff Cheyenne Exploration, LLC ("Cheyenne") against defendant Ted Alexander ("Alexander") seeking a declaratory judgment that a letter of intent executed by Cheyenne and Alexander was never intended to be a binding and enforceable agreement to enter into a mineral rights lease. According to Cheyenne's state-court petition, Cheyenne and Alexander discussed Cheyenne's obtaining a mineral rights

lease for Alexander's ranch located in Kansas. Cheyenne and Alexander executed a letter of intent in which they agreed to enter into an oil and gas lease.

Alexander's attorney later emailed to Cheyenne proposed terms of a lease that differed from those contained in the letter of intent and that were more favorable to Alexander. After Cheyenne declined to accept these terms, Alexander's attorney sent Cheyenne a letter demanding that it execute an oil and gas lease according to the parties' letter of intent. Cheyenne now brings this declaratory judgment action. It contends that the letter of intent was never intended to be a binding and enforceable agreement to enter into a mineral rights lease with Alexander—that it was written to enable the parties to undertake future negotiations and cannot be read as binding.

Alexander moves pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss Cheyenne's suit for lack of *in personam* jurisdiction.[1]  Cheyenne opposes the motion.[2]

II

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the

---

[1] Alexander moves in the alternative to dismiss for improper venue or to transfer venue. The court need not reach these alternative motions.

[2] The time for Alexander to file a reply brief has expired, and the motion is now ripe for disposition.

United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Alexander would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).

The defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted).[3]

---

[3] As Cheyenne notes in its response, Cheyenne does not assert that the court has general jurisdiction. The court therefore focuses solely on whether it has specific jurisdiction.

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines: (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies its burden by presenting a prima facie case for personal jurisdiction. *Latshaw*, 167 F.3d at 211 (footnotes omitted).

III

A

Alexander contends that Cheyenne has failed to meet its burden of establishing the requisites for personal jurisdiction.  He maintains that Cheyenne has not pleaded any facts that support subjecting him to jurisdiction in Texas, and that the contacts he made with Cheyenne were scant and insufficient to subject him to jurisdiction in Texas.  Alexander contends that the court lacks specific jurisdiction over him because he did not purposefully direct any activities to Texas.  He posits that he is a Kansas resident who conducts no business in Texas, and that Cheyenne has not alleged that he was present in Texas in

connection with the letter of intent.[4]

Cheyenne contends that the court can exercise specific *in personam* jurisdiction because Alexander participated in discussions and negotiations with a party whom he knew to be from Texas; after the parties were put into contact with each other, they began discussions regarding the proposed lease of Alexander's mineral rights, and they negotiated the terms and conditions of the lease through emails and communications that involved representatives of Cheyenne and Alexander; certain additional and revised terms were discussed in communications that occurred after the letter of intent was executed, and were sent to Cheyenne at its Dallas office; and Cheyenne's claim arises out of Alexander's contacts with Texas.

B

Taking the facts alleged in Cheyenne's state-court petition as true, the court concludes that Cheyenne has failed to meet its burden of making a prima facie showing of *in personam* jurisdiction. Cheyenne has failed to demonstrate that Alexander had sufficient minimum contacts with the forum state of Texas that arise from, or are directly related to, the declaratory judgment cause of action.

In *Brammer Engineering, Inc. v. East Wright Mountain L.P.*, 307 Fed. Appx. 845 (5th Cir. 2009) (per curiam), the Fifth Circuit held that activities incidental to forming a

---

[4]Alexander asserts that, even if he has minimum contacts with the state of Texas, the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. The court need not address whether exercising personal jurisdiction over Alexander in Texas would comport with traditional notions of fair play and justice.

contract—such as communications and requests for documents, etcetera sent to the forum state because the forum state was the home of one of the parties to the contract—were insufficient to constitute purposeful availment and the minimum contacts required to support personal jurisdiction. *Id.* at 848. Instead, the Fifth Circuit looked to the anticipated performance of the contract, choice-of-law provisions, and other relevant factors to determine specific personal jurisdiction. *See id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."). Therefore, it is not enough that Alexander participated in discussions and negotiations with a party whom he knew to be from Texas, that Cheyenne and Alexander negotiated the terms and conditions of a lease through emails and communications, and that certain additional and revised terms were discussed in communications that were sent to Cheyenne in Dallas. Under the Due Process Clause of the Fourteenth Amendment, "the mere contracting with a resident of the forum state is not in itself sufficient to establish minimum contacts such that the forum state may exercise personal jurisdiction over the defendant." *Brammer Eng'g*, 307 Fed. Appx. at 847-48 (citing *Burger King*, 471 U.S. at 479). Nor are mere negotiations with a resident of the forum state enough. *See Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001). "[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009). "The

Fifth Circuit has made clear that engaging in activities related to the contract but which do not encompass performance of the contract are insufficient to constitute minimum contacts." *Harch Hyperbarics, Inc. v. Martinucci*, 2010 WL 3398884, at \*4 (E.D. La. Aug. 20, 2010) (citation omitted) (holding that defendants did not have minimum contacts with forum state through mere formation of contract where defendants communicated via telephone and email with plaintiffs in the forum state regarding formation of the contract and traveled to the forum state).

Cheyenne's lawsuit seeks a declaratory judgment that the letter of intent was never intended to be a binding and enforceable agreement to enter into a mineral rights lease. Cheyenne does not explicitly rely on Texas as an anticipated place of performance because, under its theory of the case, the letter of intent was never intended to be a binding and enforceable agreement to enter into a mineral rights lease, and a place of performance was not contemplated. Nor does the letter of intent contain a choice of law provision that calls for the application of Texas law. Under Cheyenne's pleaded facts, if there is any anticipated place of performance or place of contemplated future consequences in the parties' relationship, it appears to be Kansas, where the oil and gas lease that is the subject of the letter of intent would be performed.

In sum, Cheyenne is relying on contacts that are more like preliminary negotiations and communications. They are activities that are incidental to forming a contract, and they have a Texas connection only because Texas is Cheyenne's home. But if Cheyenne's declaratory judgment action is meritorious and the letter of intent was never intended to be

a binding and enforceable agreement to enter into a mineral rights lease, the place of performance and of the parties' future relationship does not point to any particular place, including Texas. And if the declaratory judgment action lacks merit and the letter of intent was intended to be a binding and enforceable agreement, the anticipated place of performance of the resulting relationship (i.e., under the oil and gas lease) and the place of future consequences appears to be Kansas. Under these circumstances, Alexander could not have reasonably anticipated being haled into court in Texas.

\* \* \*

Because Cheyenne has failed to meet its burden of making a prima facie showing of *in personam* jurisdiction, the court grants Alexander's April 19, 2012 motion to dismiss and dismisses this action without prejudice by judgment filed today.

**SO ORDERED**.

July 25, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE